#### M. A. BOBO v. STATE

No. 34,727.    October 24, 1962

*John T. Buckley,* Cleveland, and *James E. Faulkner,* Coldspring, for appellant.

*William F. Griffin,* District Attorney, Conroe, *Robert F. Atkins,* County Attorney, Coldspring, and *Leon Douglas,* State's Attorney, Austin, for the state.

McDONALD, Judge.

The offense is receiving and concealing stolen property over the value of $50; the punishment, five years.

The state's testimony reflects that Mrs. Mabel Cummings was the president of Urbana Sand and Gravel Company, the corporation being the owner of the store that was broken into without her consent. Mrs. Cummings had actual custody of the building. It was her testimony that the actual cash market value of the shotgun shells taken was $63.

The state's testimony, adduced from the two accomplice witnesses, Nations and Matthews, reflects that they did break into the store belonging to Mrs. Cummings and took therefrom numerous items, including shotgun shells and cigarettes. These two witnesses did, by their testimony, fully implicate appellant. It was shown by Nations' testimony that he went with appellant to Houston, where appellant said he was going to sell the shells.

Thomas L. Ford, a state's witness, testified that he lived in Houston and operated a fish market; that he knew the appellant, had known him for three years. When asked if he had ever done business with appellant before, the witness Ford replied: "Only bought some rabbits from him." This witness further related that appellant brought some shotgun shells and cigarettes to his place of business some time during August, 1961. State's counsel then inquired: Q. "All right. Take a look in that box there, Thomas." The record reflects that the witness complied. Q. "Can you identify those?" A. "As much as I saw of it, I did. I didn't check on it, but I saw them." When asked what happened to

those shotgun shells, the witness replied that the deputy sheriff picked them up; that he was a Harris County deputy sheriff. Upon cross-examination, this witness was asked: Q. "You wouldn't have any earthly way in the world of knowing those shells from shells on the shelf of any store in this town, would you, they don't look any different to you, do they?". A. "Well, I had no occasion to check them that close." When the witness was asked: "and you don't know whether those are the same shells or not, do you?" he replied: A. "I know they were the same type of shells." In response to a question as to whether or not the appellant sold him the shotgun shells and cigarettes that he left there, the witness stated: "He—No, not direct." He said "No sir," when asked if any money passed hands. This witness also testified that appellant did not tell him that the shells were stolen and that no one told him to hide the shells and that they were not hidden.

The state then adduced testimony from Lewis Woodruff, the sheriff of San Jacinto County, as follows: Q. "All right, Sheriff, I am going to ask you to examine those boxes of shells." (The witness complied.) Q. "Have you ever seen those before?" A. "I have." Q. "Where did you see them?" A. "In Chief Frazier's office in the sheriff's office in Houston." Q. "You got these shells from the Harris County Sheriff's office?" A. "I did." The witness further related that the shells had been in his possession since that time. The shells were then admitted into evidence and marked State's Exhibit No. 1.

We think that appellant's contention that the evidence is insufficient to corroborate the testimony of the two accomplices, Nations and Matthews, has merit. We have carefully reviewed and considered all of the testimony adduced and have set forth above all of the pertinent testimony that the state offered. Ford's testimony did not establish that appellant knew the shells were stolen. In fact, it indicated that such was not the case because appellant made no suggestion to Ford that he conceal the shells nor did he intimate to him that they had been stolen. Ford made no effort to conceal the shells which were delivered to him even if they had been shown to be those which were stolen. While it is true that Mrs. Cummings did identify the shells as the ones taken from her store, she did not in anywise connect the appellant with the transaction. Ford never positively identified the shells. He was not asked if they were the same shells brought to him at his fish market by the appellant. At best, he said that they were the same type of shells.

The state failed to show that the shells acquired by the Sheriff of San Jacinto County from the sheriff's office in Houston were the same ones taken by a Harris County deputy sheriff from Ford's fish market. We fail to find any evidence to corroborate the testimony of the accomplices that appellant knew that the property was stolen. This is essential in order to sustain a conviction for this offense. Sanders v. State, 144 Texas Cr. Rep. 526, 164 S.W. 2d 685, and cases there cited. See also Stuart v. State, 137 Texas Cr. Rep. 456, 132 S.W. 2d 119; Whatley v. State, 135 Texas Cr. Rep. 432, 120 S.W. 2d 1055; Hagan v. State, 132 Texas Cr. Rep. 338, 104 S.W. 2d 857; Marquez v. State, 126 Texas Cr. Rep. 132, 70 S.W. 2d 426; and 24 Texas Jur. 2d, Evidence, 694.

We also observe that the testimony of the witness Mrs. Cummings pertaining to the cash market value of the shells in San Jacinto County is lacking in some essential requisites and that on another trial of this cause the knowledge and competency of this witness to testify to these facts should be more fully developed.

For the reasons stated, the cause is reversed and remanded for another trial.